2:10-cv-02080-KJD -PAL

:David-Wynn: Miller



:C.-S.-S.-C.-S.-L.-FLAG OF THIS DOCUMENT-CORPORATION-VESSEL-COURT:
IN THE UNITED-STATES-POSTAL-SERVICE-DI-STRICT-COURT OF THE ARIZONA-STATE-TERRITORY:

DIMITRITZA TOROMANOVA

## :UNITED-STATES-DISTRICT-COURT IN THE DISTRICT OF THE NEVADA
# :QUO-WARRANTO-COMPLAINT-DOCUMENT:

**:Dimitritza: Toromanova[BOX~19153-~LAS-VEGAS-~NEVADA-~89132]**

**:David-Wynn: Miller. PLENIPOTENTIARY-JUDGE.[5166 NORTH-~63,~MILWAUKEE,~WISCONSIN-~53218] :SYNTAX-WITNESS OF THE VASSALEES-FRAUD.**

**:CLAIMANT-PLAINTIFF:**

:CONTEST--~VS.

SOMA FINANCIAL[~871~CORONADO-CENTER-DRIVE~#110,~HENDERSON, NEVADA~89052]
**[LOAN-NUMBER-#8893626]**WELLS FARGO N.A.
Nevada title company[2500 NORTH BUFFALO-SUITE#150, ~LAS-VEGAS,~NEVADA-~89128]AMERICA'S SERVICING
MORTGAGEEL ECTRONIC REGISTRATION; CO.
SYSTEM, INCORPORATION
="MERS"[P.O.BOX~2026,~FLINT,-~MICHIGAN-~48501-2026]

**:VASSALEES:**NATIONAL DEFAULT SERVICING
CORPORATION

:CORPORATION-CASE-NUMBER~                                    .

FOR THIS CORRECT-SENTENCE-STRUCTURE-COMMUNICATION-SYNTAX-LANGUAGE **IS** WITH THIS **QUO-WARRANTO-COMPLAINT-DOCUMENT** AGAINST THE VASSALEES'-EVIDENCE-FICTION-SYNTAX-DOCUMENT BY THESE CLAIMANTS.
FOR THIS CLAIMANTS-EQUITY-CARETAKERS-FEES-CLAIM OF THIS $343,596.00 **IS** WITH THE LOCATION OF THE LAND-ADDRESS--~145-~EAST-HARMON-AVENUE-~#519, ~LAS-VEGAS-~NEVADA-~89109 BY THE TOTAL-CARETAKERFEE-HOURS OF THE CLAIMANT: Dimitritza: Toromanova AS THE TRUSTEE-EMPLOYMENT BY THE "DEED OF TRUST"-LOAN-NUMBER-#8893626"-EMPLOYMENT-DOCUMENT.

FOR THESE TERMS OF THIS C.-S.-S.-C.-S.-L.-NOW-TIME-VESSEL-COURT-DOCUMENT:
**:VASSALEE-(WORD-MEANING) VASSAL** = SERVANT OF THIS DOCUMENT, **EE**=PLOYEE.
**:C.-S.-S.-C.-S.-L.**= :CORRECT-SENTENCE-STRUCTURE-COMMUNICATION-SYNTAX-LANGUAGE.
**:D.-C.** = FOR THE **DOCUMENT-CLAIM** OF THIS DOCUMENT-VESSEL-COURT.
**:D.-S.-C.-S.** = FOR THE DOCUMENT-STATE-CLAIMS-SECTION = FOR THESE SYNTAX-COMMUNICATION-WORD-CORRECTIONS OF AN AILING-**UNITED STATES TITLES** AND: **UNITED STATES CODES ARE** WITH THE SYNTAX-CORRECTIONS OF AN AILING-FICTIONAL-SYNTAX-MODIFICATION-LANGUAGE-CODE.
**:DOCUMENT-VESSEL** = FOR THE COURT-DOCKETING OF A DOCUMENT-VESSEL-PERSON **IS** WITH THE CORPORATION-CLAIM BETWEEN THE TWO-OR MORE-PERSONS WITH THE COURT-DOCUMENT-PORTING-STAMP BY THE COURT-PORT-CLERK.
**:DOCUMENT-STATE** = FOR THE CORPORATION OF THESE TWO-OR-MORE-PERSONS **ARE** WITH THE PORTING-CLAIM BY THE DOCUMENT-VESSEL.
**:NOW-TIME-TENSE** = :C.-S.-S.-C.-S.-L.
**:CONJUNCTION: AND:** = ALSO, COMMAND, **OR** = OPTION, EITHER.
**:F.-L.-F.** = FOR THE FICTION-LANGUAGE-FORMAT.
**:FICTION =** :SPECT, FICTION, MODIFICATION, OPINION, *PRESUMPTION, ASSUMPTION,* APARTHEID, ILLUSION, MISTIC, PHANTOM, FRAUD AND MISLEADING.
**:LODIAL =**[ARTICLE] FOR THE **SPECIFIC** = A, AN, THE, THIS, THESE.
**:POSITION** = FOR, OF, WITH, BY, IN, AS, AGAINST(VOID-CONTRACT-WORD)
**:VASSALEE** = FOR THE **SERVANT-EMPLOYEE** OF THIS COMPLAINT-DOCUMENT.
**:VERB** = FOR THE THINKING-MOTION OF A THOUGHT = **IS** = SINGULAR, **ARE** = PLURAL.
**:VESSEL** = FOR THE MARITIME :ORIGINAL-LOCATION.
**:VOLITION** = FOR THE CLAIMANT'S-KNOWLEDGE OF THE FACTS **IS** WITH THE CAUSE-CLAIM OF THE MOTION-THINKING WITH THE VESSEL OF THE C.-S.-S.-C.-S.-L.-NOW-TIME-VESSEL-COURT-DOCUMENT-COMMUNICATIONS.
**:VERB-SYNTAX: IS**=SIGULAR-SYNTAX-TENSE, **ARE**=PLURAL-SYNTAX-TENSE, THINKING-MOTION.

FOR THE **TITLE-~28: D.-S.-C.-S.-~1331** OF THE COURT-CLERK'S-DUTY **IS** WITH THE DOCKING OF THE DOCUMENT-VESSEL-COMPLAINT WITH THIS CORPORATION-CASE BY THIS DOCUMENT-VESSEL-COURT.

WITH THE COPYCLAIM/COPYRIGHT-~22-~NOVEMBER-~2010 BY THE PLENIPOTENTIARY-JUDGE: David-Wynn: Miller AND CLAIMANT: **Dimitritza: Toromanova** OF THIS DOCUMENT-STATES-CORPORATION-VESSEL-COURT.

DIMITRITZA TOROMANOVA

FOR THIS CONSTITUTIONAL-DOCUMENT OF THIS COURT-DOCUMENT'S-LOCAL-RULES ARE WITH THE C.-S.-S.-C.-S.-L.-VESSEL-COURT-CLAIMS OF THIS DOCUMENT-STATE WITH THIS CORPORATION-VESSEL-COMPLAINT:

:DOCUMENT-CLAIM-~1: FOR THE C.-S.-S.-C.-S.-L. OF THE CORRECT-SYNTAX-FACTS ARE WITH THE FACT-AS-FACT-CLAIM BY THE C.-S.-S.-C.-S.-L.-DOCUMENT-VESSEL.

:DOCUMENT-CLAIM-~2: FOR THE JUDGE'S-JUDGEMENT OF THE FACTS IS WITH THE C.-S.-S.-C.-S.-L.-CLAIMS OF THE CORRECT-SYNTAX-FACTS WITH THE NOW-TIME-CONTINUANCE-EVIDENCE BY THESE DOCUMENT-COURT-PERSONS.

:DOCUMENT-CLAIM-~3: FOR THE CLAIMANTS OF THE CORRECT-FACTS ARE WITH THE CLAIMS OF THE SPEECH, WRITINGS, FAITHS, PRESS, DOCUMENT-PORTING WITH THE GRIEVANCES IN A C.-S.-S.-C.-S.-L.-ORIGINAL-JURISDICTION- COURT.

:DOCUMENT-CLAIM-~4: FOR THIS CORPORATION-CASE OF THIS COURT-VESSEL-DOCUMENT IS WITH THE C.-S.-S.-C.-S.-L.-CLAIMS OF THE PERSONS BY THE SAME-LODIAL-VOLITION.

:DOCUMENT-CLAIM-~5: FOR THIS COURT-CONSTITUTION OF THE FACTS ARE WITH THE CLAIMS BY THE PERSON'S-C.-S.-S.-C.-S.-L.-KNOWLEDGE.

:DOCUMENT-CLAIM-~6: FOR THE CLAIM OF A C.-S.-S.-C.-S.-L.-CAPTURE-WARRANT OR: C.-S.-S.-C.-S.-L.-SEARCH-WARRANT IS WITH AN AUTOGRAPH OF THE JUDGE WITH THE C.-S.-S.-C.-S.-L.-OATH BY THE C.-S.-S.-C.-S.-L.-AUTHORITY-DUTY.

:DOCUMENT-CLAIM-~7: FOR THE WITNESSING OF A WITNESS'S-TESTIMONY IS WITH THE CLAIM AGAINST THE PERSONAL-SELF.

:DOCUMENT-CLAIM-~8: FOR THE WITNESS'S-KNOWLEDGE OF THE CORRECT-SYNTAX-FACTS IS WITH THE CLAIMS OF THE WITNESSES, COUNSELS AND: EVIDENCE-FACTS.

:DOCUMENT-CLAIM-~9: FOR THE TWELVE-(12)PERSON-JURY'S-KNOWLEDGE BY THE C.-S.-S.-C.-S.-L.-CLAIMS ARE WITH THE CLAIMS BY THE CORRECT-SYNTAX-TRIAL.

:DOCUMENT-CLAIM-~10: FOR THE TERMS OF A CONVICTION-PERSON'S-PUNISHMENT IS WITH THE C.-S.-S.-C.-S.-L.-CLAIMS OF THE BAIL-TERM-CONDITIONS, FINANCIAL-TERM-FINES AND/OR: JAILING-TERMS WITH THIS DOCUMENT-COURT.

:DOCUMENT-CLAIM-~11: FOR THE COURT-DOCUMENT-FIDUCIARIES OF THESE FACTS ARE WITH THE DUTY-CLAIM OR: ELECTION-CLAIM BY A C.-S.-S.-C.-S.-L.-OATH WITH THIS CORPORATION-DOCUMENT.

:DOCUMENT-CLAIM-~12: FOR THE VESSEL-DOCUMENT OF THE DOCUMENT-STATES-HEREIN IS WITH THE CLOSURE-CLAIM OF THE VOLITION WITH THE DOCUMENT, CONSTITUTION, TREATY, CO-OPERATION, DOCUMENT-STATES-CORPORATION, COMPACT, AND: PERSONS'-TRUST-DOCUMENTS.

:DOCUMENT-CLAIM-~13: FOR THE JUDGE'S-KNOWLEDGE OF THESE CONSTITUIONAL-TERMS IS WITH THE CORPORATION-CLAIM OF THIS DOCUMENT-TERRITORY-COURT WITH THE CORRECTIING-SYNTAX-WRONGS BY THE C.-S.-S.-C.-S.-L.-CERTIFICATION.

## FOR THESE CAUSES OF THIS QUO-WARRANTO-COMPLAIMT:

~1 FOR THE C.-S.-S.-C.-S.-L.-CORRECTIONS OF THE FICTIONAL-SYNTAX-MODIFICATION-COMMUNICATION-COURT-DOCUMENTS ARE WITH THE AILING-SYNTAX-CLAIMS OF THE VASSALEE'S-WRONG-WORD-COMMUNICATION-EVIDENCE WITH THE FOUR-TIMES-EQUITY-DAMAGES OF THE CLAYTON-ACT(1914)BY THE CLAIMANT- Dimitritza: Toromanova's-EVIDENCE.

~2 FOR THIS CLAIMANT- PLENIPOTENTIARY-JUDGE: David-Wynn: Miller's-KNOWLEDGE OF THE PERFECT-SYNTAX-EVIDENCE-FACTS IS WITH THE CORRECT-VOLITION-CLAIM OF THIS SUMMARY-CORRECTION-AUTHORITY: TITLE-~42: D.-S.-C.-S.-~1986 AGAINST THE WRONG-SYNTAX-COMMUNICATIONS BY THE VASSALEE'S-DOCUMENT-PLEADING-EVIDENCE WITH THE VASSALEE: SOMA FINANCIAL[~871~CORONADO-CENTER-DRIVE~#110,~HENDERSON, NEVADA~89052][LOAN-NUMBER~#8893626].

~3 FOR THE VASSALEE'S-WRITTEN-VOLITIONS BY AN AILING-DOCUMENT-NEVADA-FEDERAL-HOUSING-AUTHOTITY: DEED OF TRUST-FORM-~3029 AND: MULTI-FAMILY-RIDER-FORM~3170 ARE WITH THE PERFECT-PHYSICAL-EVIDENCE-DAMAGE-CLAIMS OF THE 'DEED OF TRUST' WITH THE TITLE-~42: D.-S.-C.-S.-~1986 WITH THE KNOWLEDGE OF AN AILING-FRAUDULENT-DOCUMENT WITH AN AILING-CAPTURE-ORDER AGAINST THE CLAIMANT.

~4 FOR THE CORPORATION-CASE-DOCUMENT-PERSON'S-DUTIES OF THE **C.-S.-S.-C.-S.-L.** **ARE** WITH THE CLAIMS BY THE CORPORATION-CASE-DOCUMENT-PERSONS.

~5 FOR THIS PLENIPOTENTIARY-JUDGE: David-Wynn: Miller's-KNOWLEDGE OF THE **TITLE-** **~42: D.-S.-C.-S.-~1986 IS** WITH THE (**DEED OF TRUST**)-EVIDENCE-FRAUD BY THE NUMBER-KEY-CODED-WORDS.

~6 FOR THE **C.-S.-S.-C.-S.-L.**-CLERK'S-OATH BY AN AUTOGRAPH **IS** WITH THE CLAIM OF THE **TITLE-~28: D.-S.-C.-S.-~1331:** DOCUMENTING-JURISDICTION WITH THE PLEADINGS OF THESE CORRECTIONS WITH THIS CORPORATION-CASE.

~7 FOR THE **C.-S.-S.-C.-S.-L.** OF THIS SALVAGE-CLAIM: **TITLE-~46: D.-S.-C.-S.-~781 IS** WITH AN ORIGINAL-AUTHORITY-JURISDICTION-CLAIM OF THIS **DOCUMENT-STATES-** **POSTAL-SERVICE-DI-STRICT-COURT OF THE DOCUMENT-STATE-TERRITORY-VESSEL** WITH THESE VOID-COMMUNICATION-CLOSURE-EVIDENCE-DOCUMENTS OF AN AILING-MORTGAGE-DOCUMENT-DOCUMENT BY THIS **SOMA FINANCIAL[~871~CORONADO-CENTER-** **DRIVE~#110,~HENDERSON, NEVADA~89052-(VASSALEE)**.

~8 FOR THE CLAIMANT'S-KNOWLEDGE OF THE PERSONAL-CARETAKER'S-WORKING-WAGE-EQUITY WITHIN THE MINIMUM-WAGE OF THE NEVADA-STATE-RATE IS WITH THE CLIAM OF THE YEARS-~17-~APRIL-~2007, THROUGH THE CURRENT-DATE WITH THIS DOCUMENT-FILE-STAMP-CLOSURE OF THE **FOURTY-ONE-(43) MONTHES-(102-WEEKS X $1682.00 = $171,564.00 +** **52-WEEKS-TIMES $1520.00 = $79,020.00 + 28-WEEKS X-$1357.00 = $35,282.00 =** **$285,864.00)** WITH THE CLAIMANT-TRUSTEE/CARETAKER WITH THE FRAUDULENT-SYNTAX-MORTGAGE-DOCUMENTS BY THE **SOMA FINANCIAL[~871-~CORONADO-CENTER-DRIVE-~#110,-** **~HENDERSON, -~NEVADA-~89052**.

~9 FOR THE CLAIMANTS'-FACTUAL-AILING-EVIDENCE OF THE VASSALEES'-PLEADING-WRITTEN-DOCUMENTS **ARE** WITH THE DAMAGE-CLAIM OF AN ORIGINAL-JURISDICTION-TERRITORY WITH THIS DOCUMENT-COURT OF THE **TITLE-~28: D.-S.-C.-S.-~636** WITH THE SYNTAX-CORRECTIONS BY THE **C.-S.-S.-C.-S.-L.**-CORPORATION-CASE-VESSEL.

~10 FOR THE **PREFIX = FUTURE-TIME "TO", "PRE" AND: SUFFIX = PAST-TIME:, "ED",** **"FROM" IS** WITH THE VIOLATION OF A NOW-TIME-CLAIM.

~11 FOR THE WORDS OF AN ADVERB-MODIFICATIONS **ARE** WITH AN USE WITH THE SINGLE-[**PRE**]POSITION AND: SINGLE-LODIAL-[ARTICLE] OF AN ADVERB WITH THE VOID OF THE POSITIONAL-LODIAL-FACT-PHRASE WITH THE **SINGLE-WORD-MODIFIER** AS THE: **A, AS, AT,** **AM, BECAUSE, BEFORE, BEGIN, BUT, BY, CAN, COME, COULD, DO, DOES, FROM, HE, HER,** **I, IN, JUST, OF, OVER, IT, HAS, HIS, HER, HOW, MUCH, NO, NOT, PUT, RE, SO, SHE,** **SHOULD, SOME, SUCH, THAT, THAN, THE, THEY, THEIR, THEM, THEN, TO, THIS, THOSE,** **THROUGH, UNDER, USE, WANT, WAS, WE, WHEN, WHAT, WHERE, WITH, WITHOUT, WITHIN,** **WHO, WHOM, WOULD, YOU, YOUR,** INTO THE VERB-FICTION-AILING-LAW AND/OR: VERB-FICTION-AILING-FACT BY THE VASSALEES.

~10 FOR THE CLOSURE-FRAUD OF THE VASSALEE'S-WRONG-WORD-MEANINGS AND WITH THE CLOSURE-FRAUD OF THE SENTENCE-STRUCTURES **ARE** WITH THESE VIOLATIONS-CLAIMS OF THE TITLE-~18: D.-S.-C.-S.-~1001: FRAUDULENT-SYNTAX-LANGUAGE AND: TITLE-~15: D.-S.-C.-S.-~1692-~e WITH THE FALSE-WRITINGS AND: MISLEADING-STATEMENTS WITH THE FRAUD-PENALTY-FEE: TITLE-~15: D.-S.-C.-S.-~78-~ff($25-MILLION-DOLLARS-PENALTY-FINES) BY THE VASSALEES.

~11 FOR THE CLAIMANT'S-KNOWLEDGE OF THE FACTS **ARE** WITH THE DAMAGE-CLAIMS BY THE VOLITION-PERJURY AND: ILL-WILLS WITH THE **TITLE-~18: D.-S.-C.-S.-~1621** BY THE FRAUDS AND: PERJURY OF AN OATHS, FICTION-**LETTERS OF MARQUES**, JUDGEMENTS AND: NOTIONS AND: MOTIONS BY THE VASSALEES.

~12 FOR THE VIOLATIONS OF THE **TITLE-~18: D.-S.-C.-S.-~641 IS** WITH THESE DAMAGE-CLAIMS OF THE SYNTAX-FRAUDS, MONETARY-FEES, PAYMENT-FEES, COMMERCE-FEES OR: CRIMINAL-ACTS FROM THE PUBLIC-TAX-FUND AS THE VASSALEE'S-SALARY WITH THE **F.-L.-** **F.**-DOCUMENT-PLEADING BY THE VASSALEES.

~13 FOR THE <u>CLAIMANT'S-KNOWLEDGE</u> OF THESE FACTS **ARE** WITH THE CLAIM OF THE <u>**C.-S.-S.-C.-S.-L.**</u>-DOCUMENT-CORRECTIONS BY THE <u>DOCUMENT-STATES-POSTAL-SERVICE-DI-STRICT-COURT OF THE NEVADA-STATE-TERRITORY-JUDGE</u>.

~14 FOR THE <u>SENTENCE-STRUCTURES-VIOLATIONS OF THE VASSALEES-PLEADINGS</u> **ARE** WITH THE <u>PRESUMPTIONS, ASSUMPTIONS, OPINIONS, APARTHEID, AILING AND: MODIFICATIONS OF THE WORDS</u> WITH THE <u>CLAIMANT'S-COUNCIL</u> IN AN <u>ORIGINAL-AILING-DOCUMENT-COURT</u>.

~15 FOR THE <u>SYNTAX-WORD-OPERATIONS OF AN AILING-SENTENCE-STRUCTURES</u> **ARE** WITH THE <u>DOCUMENTED-EVIDENCE-CLAIMS</u> OF THE <u>WRITTEN-VOLITIONS, PLEADINGS, NOTIONS, ORDERS, MOTIONS, CLAIMS, AND: JUDGEMENTS</u> WITH THE DOCUMENTS BY THE VASSALEES.

~16 FOR THE BREACH OF THE <u>CLAIMS OF THE CORPORATION-CASE-~</u>_____.
**IS** WITH THE **<u>TITLE-~42: CHAPTER-~16: D.-S.-C.-S.-~12182: BIAS/PARTIAL</u>** THROUGH THE BREACHES OF THE **<u>TITLE-~29: DOCUMENT-CLAIMS</u>, :<u>CHAPTER-~16: SECTION-~701-~c-~2</u>,** WITH THE POLICY OF AN <u>EQUAL-SYNTAX-DUTY-DOCUMENT</u> WITHIN THE **<u>DOCUMENT-STATES-POSTAL-SERVICE-DI-STRICT-COURT OF THE NEVADA-STATE-TERRITORY-VESSEL</u>** WITH THE **<u>TITLE-~42: D.-S.-C.-S.-~1986</u>**, BY THE <u>CLAIMANTS'-SYNTAX-CORRECTION</u>.

~17 FOR THE <u>DOCUMENT-STATES-POSTAL-SERVICE-DI-STRICT-COURT OF THE NEVADA-STATE-TERRITORY</u> **ARE** WITH THE <u>DOCUMENT-CLAIMS</u> OF THE <u>WRITING-FACTS-EVIDENCES</u> IN THE <u>**C.-S.-S.-C.-S.-L.**</u>-CLAIMS OF THIS <u>FIDUCIARY-OATH</u>.

~18 FOR AN IDEA, ONE-THOUGHT AND: <u>ONE-AUTHORITY-JURISDICTION</u> WITH THE <u>ONE-NOW-TENSE-TIME</u> **IS** WITH THE <u>PLEADING-CLAIMS</u> OF THE <u>DOCUMENT-COURT-CORPORATION</u> WITH THE <u>SUMMARY-CORRECTION</u> BY THE JUDGE.

~19 FOR THE <u>FACTUAL-EVIDENCE</u> OF THE <u>VASSALEE'S-WRITINGS-SKILLS</u> **IS** WITH THE CLAIMS BY THE <u>VASSALEES'DOCUMENTS</u> WITH THE CHEATING OF THE <u>F.-L.-F.</u>-WRITING-LAW-TESTS WITH THE <u>F.-L.-F.-LAW-SCHOOLS</u> AND: STATE-TESTING-PERSON BY THE PASSING OF THESE PERSON-*ATTORNEYS AND: LAWYERS* WITH THE <u>VOID OF THE **C.-S.-S.-C.-S.-L.**</u>-SKILLS WITH THE READING OR: WRITING-DAMAGE AGAINST THE <u>CLAIMANTS OF THIS CORPORATION-CASES</u> IN THE <u>**C.-S.-S.-C.-S.-L.**</u>-FACTS.

~20 FOR THE **<u>C.-S.-S.-C.-S.-L.</u>**-CORRECTION OF THE DOCUMENT-SERVICING WITH THE SUMMARY-CORRECTIONS **ARE** WITH THE CLAIM BY THE <u>DOCUMENT-STATES-POSTAL-SERVICE-DI-STRICT-COURT OF THE NEVADA-STATE-TERRITORY</u>.

~21 FOR THE SECURITY OF THE **<u>C.-S.-S.-C.-S.-L.</u>**-FACTS **ARE** WITH THE CLAIMS OF THE <u>CORPORATION-CASE-NUMBER</u> WITH AN <u>AUTHORITY-JURISDICTION</u> OF THE COURT WITH THE <u>DOCUMENT-STATES-CORPORATION</u> BY THIS <u>DOCUMENT-STATES-POSTAL-SERVICE-DI-STRICT-COURT OF THE NEVADA-STATE-TERRITORY</u>.

~22 FOR THE <u>SYNTAX-FRAUD</u> OF THE PRONOUNS AND: <u>NOUN-VERBS = GERUND-NOUNS</u> **ARE** WITH THE <u>MODIFICATION AND: OPINION-CLAIMS</u> OF AN <u>AILING-ADJECTIVE-FICTIONAL-USE-DEAD-NAME</u> = PSEUDONYM WITH THE MAIL-FRAUDS OF THE <u>TITLE-~18: D.-S.-C.-S.-~1342</u> WITH EACH <u>VASSALEES'-SUMMARY-EVIDENCE</u> BY THE CLAIMANTS.

~23 FOR THESE <u>NEGATIVE-WORD-VOLITIONS</u>: **NEGATIVE, NOT, WITHOUT, NO,** ARE WITH THE DAMAGE-CLAIM AS THE <u>MODIFICATIONS-VOLITION</u> WITH THE <u>VACATING-CLAIMS</u> OF THE <u>CORRECT-NOTIFICATIONS</u> WITH THE VASSALEES AND: CLAIMANT OF THE <u>COURT-VESSEL</u>.

~24 FOR THE <u>CLAIMANTS'-DAMAGES</u> OF THE <u>POSTAL-FLAG-COURT</u> **ARE** WITH THE <u>DAMAGE-CLAIMS</u> OF THE SYNTAX-MODIFICATION-PAPERS BY THE VASSALEES.

~25 FOR THE **<u>TITLE-~18: D.-S.-C.-S.-~1621</u>**: **PERJURY OF AN OATH IS** WITH THE LOSS OF THE JURISDICTION WHILE <u>ACTING, TAKING</u>, PRACTICING OR: CONDUCTING-CRIMINAL-ACTIONS BY EACH VASSALEE, JUDGE, ATTORNEY, LAWYER OR: PERSON.

~26 FOR THE **DOCUMENT**-RULES OF THESE DOCUMENT-PERSONS **ARE** WITH THE <u>CLOSURE-CLAIM</u> OF THE <u>ONE-JURISDICTION-SYNTAX-RULE</u> OF AN <u>AUTHORITY</u> WITH THIS <u>FACTUAL-FRAUDULENT-LANGUAGE-EVIDENCE</u> OF THE **FICTIONAL-LANGUAGE-FORMAT** BY THE VASSALEES.

~27 FOR THE FRAUDULENT AND: <u>FICTIONAL-USE</u> BY THE <u>SYNTAX-WORD-MODIFICATIONS</u> **ARE** WITH THE <u>DAMAGE-CLAIMS</u> OF THE FACTS AS THE <u>GERUND-VERBS, PRONOUNS OR: ADJECTIVES</u> WITH THE PERJURY OF AN OATH WITH THE <u>SAFE-GUARDING</u> OF THE <u>CLAIMANTS</u>.

~28 FOR THE FRAUDULENT-USES OF THE FACTS **ARE** WITH THE NEGATIVE-CLAIM OF THE PREFIXES: **AB, AC, AF, AN, DE, DIS, EM, EN, EX, IM, IN, MAL, MIS, NE, NO, NON, NOR, OB, OC, OP, OF, PRE, PRO, PRI, PRU, RE, SI, SUB, TO, UN,** OR: WITH THE MODIFICATION OF THE FACT BY AN ADVERB OR: ADJECTIVE-MODIFICATION WITH THE **C.- S.-S.-C.-S.-L.**-CLAIM OF THE TITLE-~18: D.-S.-C.-S.-~1001 WITH THE FICTITIOUS-LANGUAGE OF THE SUMMARY-CORRECTIONS BY THIS PLENIPOTENTIARY-JUDGE.

~29 FOR THESE CLAIMANTS'-DOCUMENTS OF THE **C.-S.-S.-C.-S.-L. ARE** WITH THE NOW-TIME-FACTS OF THE POSITIONAL-LODIAL-FACT-PHRASES, LODIAL-[ARTICLE], AND: VERBS: **IS=SINGLAR,** AND: **ARE=PLURAL,** WITH THE SINGLE-IDEA-CONTENT-SENTENCE OF THE FACTS BY THE CLAIMANTS'-DOCUMENT-CLOSURE-VOLITION.

~30 FOR THE TITLE-~42: D.-S.-C.-S.-~1985-~1 OF THE TWO-OR-MORE-AILING-FICTIONAL-SYNTAX-FILINGS **IS** WITH THE FICTIONAL-SYNTAX-CLAIMS OF THE CONSPIRACY BY THE VASSALEES. FOR THE CROSS-CLAIMS OF THIS CRIMINAL-CODE: **TITLE-~18: D.-S.- C.-S.-~241 IS** WITH THE CONSPIRACY-DAMAGE-CLAIM OF THE DOCUMENTING-VASSALEES WITH THE CORPORATION-SUPPORT OF THE FICTIONAL-COURT-ORDERS OF AN ADVERB-VERB-SYNTAX-FICTION-LANGUAGE AS THE FICTION-PLEADINGS BY THE VASSALEE-JUDGE.

~31 FOR THE **TITLE-~42: D.-S.-C.-S.-~1985-~2** OF AN OBSTRUCTING-COURT **IS** WITH THE MODIFICATION-VOID-LAW OF AN AILING-WORD-MEANING WITH AN AILING WORD-TERMS WITH THE FICTION-OPINION, MODIFICATION, *PRESUMPTION, ASSUMPTION* AND: *APARTHEID* AGAINST THE CLAIMANT BY THE VASSALEES'-**"DEED OF TRUST"**-DOCUMENT.

~32 FOR THE CLAIMANTS'-EVIDENCE OF THE F.-L.-F.-DOCUMENTS **ARE** WITH THE DAMAGE-CLAIM OF THE **TITLE-~42: D.-S.-C.-S.-~1985-~3** WITH THE DEPRIVATION-PLEADINGS OF THE FACTUAL-BANK-"DEED OF TRUST"-DOCUMENT.

~33 FOR THE PLENIPOTENTIARY-JUDGE AS A SAFEGUARDING-WITNESS **IS** WITH THE DUTY-CLAIM AGAINST THE DISABILITIES OR: HANDICAPPING-COMMUNICATION-FRAUDS BY THE VASSALEES AND BY AN AILING-COURT-SYNTAX-COMMUNICATIONS.

~34 FOR THE CLAIM OF THE COURT-CORPORATION **IS** WITH AN ORIGINAL-PORT-COURT OF THE SAME-LEVEL-PLANE WITH AN ORIGINAL-AUTHORITY-JURISDICTIONAL-LAW OF THE DOCUMENT-STATES-CORPORATION-FLAG WITH THE CONSTITUTION OF AN OPERATIONAL-CLAIM WITH AN EVIDENTIAL-CLAIMS OF THE **C.-S.-S.-C.-S.-L.**-FACT AS THE FACT WITH THE CORRECT-NOW-TIME-POSITIONAL-PHRASES OF THE CLOSURE WITH THE **C.-S.-S.-C.-S.-L.**-DOCUMENT-CORRECTIONS BY THE VASSALEES.

~35 FOR THE **TITLE-~28: D.-S.-C.-S.-~1361** OF THE COMPLIANCE-DUTY **IS** WITH THE CLAIM OF THE **C.-S.-S.-C.-S.-L.**-DI-STRICT-COURT-CLERK WITH THE **C.-S.-S.-C.-S.- L.**-CORRECTION BY THIS COURT-CORPORATION.

~36 FOR THE HANDICAP-VICTIM-PERSON OF THE FICTIONAL-SYNTAX-'DEED OF TRUST'-WRITING **IS** WITH THE DISABILITY-ACT-VIOLATION-CLAIM OF THE HANDICAPPING-CAUSE WITH THE MOTION BY THAT PERSON'S-CLOSURE-CONTEMPT, APARTHEID, BIAS, CONTRACT-TREASON AND/OR: RAPE WITH THAT F.-L.-F.-COURT-JUDGEMENTS OR: ORDERS BY THE **SOMA FINANCIAL**-FRAUDULENT-SYNTAX-MORTGAGE-DOCUMENTS.

~37 FOR THE VOLITION BY THE FALSIFICATION, CONCEALMENT AND: COVER-UP **IS** WITH THE FACTUAL-EVIDENCE-CLAIMS AND: CONFESSION OF THE TRICKS AND SCHEMES WITH THE VASSALEES'-FICTION-SYNTAX-STATEMENTS OF THE FRAUDULENT-'DEED OF TRUST' WITH THE FRAUDULENT-SYNTAX-MORTGAGE-DOCUMENTS BY THE **SOMA FINANCIAL[~871-~CORONADO-CENTER-DRIVE-~#110,-~HENDERSON, -~NEVADA-~89052.**

~38 FOR THE CLAIMANTS-KNOWLEDGE OF THE FRAUDULENT-COMMUNICATION **IS** WITH THE DAMAGE-CLAIMS OF THE TITLE-COMPANY'S-CLOSING-ATTORNEY WITH THE KNOWLEDGE OF THE **C.-S.-S.-C.-S.-L.**-SKILLS BY THE **SOMA FINANCIAL**-FRAUDULENT-SYNTAX-MORTGAGE-DOCUMENTS: *"TRUST ME, THAT'S HOW THE MORTGAGE DEEDS ARE WRITTEN".*

~39 FOR THE TITLE-~18: D.-S.-C.-S.-~641-THROUGH-~665 WITH THE TAKING OR: STEALING OF THE GOVERNMENT-PROPERTY AND:/OR: MONEY WITH THE **C.-S.-S.-C.-S.-L.**-OATH BY THE BOXING-VOID-WORD-VACATING, ITALIC-WORD-VACATING BY THE **SOMA FINANCIAL**-FRAUDULENT-SYNTAX-MORTGAGE-DOCUMENTS.

~40 FOR THE WORD-PATTERNS OF THE WORD-TERMS **ARE** WITH THE DAMAGE-CLAIMS OF THESE 100%-WORD-ERRORS AND: WRONG-WORD-SYNTAX-MEANINGS WITH THE SENTENCE-STRUCTURING BY THESE VASSALEE'S-AILING-DOCUMENTS.

~41 FOR THE CLAIMANTS-KNOWLEDGE OF THE CLOSURE-CLAUSES: DOCUMENT-CLAIMS-~26-~e: CLOSURE-PORTING OF THE D.~C.~~60~~b: COVERY-EVIDENCE-FACTS **ARE** WITH AN AUTHORITY OF THE **TITLE-~42: D.~S.~C.~S.~~1986** WITH THE KNOWLEDGE OF THE **C.-S.~S.~C.~S.~L.** WITH THE DAMAGING-SYNTAX-LANGUAGE BY THE **SOMA FINANCIAL [~871~CORONADO-CENTER-DRIVE~#110,~HENDERSON, NEVADA~89052] [LOAN-NUMBER~#8893626** FOR AN NEVADA TITLE COMPANY-~2500-~NORTH-~BUFFALO, -~SUITE#150,-~LAS-VEGAS, NEVADA-~89128 **BY THE** FRAUDULENT-SYNTAX-MORTGAGE-DOCUMENTS.

~42 **FOR THESE DAMAGE-CLAIMS BY THE CLAIMANT:** FOR THE CLAIMANTS-KNOWLEDGE OF THESE FACTS **IS** WITH THE **EQUITY-DAMAGE-CLAIM** OF THE LOSS WITH THE **CARETAKER-TRUSTEE-FEES =** FOR THE CARETAKERS-FEES-DUE TO THE CLAIMANT: ~2006-JULY-~26-THROUGH-2006-~DEC-~31 = 23-WEEKS @ $1195.00 = $27,485.00, ~2007-YEAR-FEE = $70,574.00; ~2008-YEAR-FEE = $79,019.00; ~2009-YEAR-FEE = $87,464.00; ~2010-JAN-~1-THROUGH-~2010-~DEC.-~29-YEAR-FEE = $79054.00, FOR THE CLAIMANT-TOTAL-WAGES-DUE OF THE FEE: **$343,596.00, WITH** THE **HOUSE AND: LAND-ADDRESS-~145-~EAST-HARMON-AVENUE-~#519, -~LAS-VEGAS, -~NEVADA-~89109,** WITH THE **START-TIME-DATE-~26-~JULY-~2006 THROUGH THE NOW-TIME-~2010-~NOVEMBER-~22,** WITH THE PAYMENT OF THE **TRUSTEE-EMPLOYMENT-EQUITY-FEES** WITH THE MINIMUM-CARETAKERS-FEE OF THE EVERYDAY-OCCUPANCY-CARETAKER-WAGES WITH THE NEVADA-LABOR-RATE OF THIS FILE-STAMP-DOCUMENT WITH THE CORRECTION-COMMAND OF THESE SYNTAX-FRAUDS WITH THE **SOMA FINANCIAL[~871~CORONADO-CENTER-DRIVE~#110,~HENDERSON, NEVADA~89052] [LOAN-NUMBER~#8893626]** FOR AN NEVADA TITLE COMPANY[~~2500-~NORTH-~BUFFALO, -~SUITE#150,-~LAS-VEGAS, NEVADA-~89128] BY THE VASSALEES' DOCUMENTED-BANK-FRAUD-CONFESSIONS.

~43 FOR THE SYNTAX-COMMUNICATION-FRAUD-EVIDENCE OF THE EVIDENCE-FRAUDULENT-COMMUNICATION-MORTGAGE-ILLUSION **IS** WITH THE VOIDANCE OF THE PERJURY, BANK-FRAUD AND: MONEY-THEFT BY THE '**DEED OF TRUST**' WITH THE FICTION-LOAN-NUMBER BY THE **SOMA FINANCIAL[~871~CORONADO-CENTER-DRIVE~#110,~HENDERSON, NEVADA~89052] [LOAN-NUMBER~#8893626]** FOR AN NEVADA TITLE COMPANY-~2500-~NORTH-~BUFFALO, -~SUITE#150,-~LAS-VEGAS, NEVADA-~89128WITH THE CRIMINAL-EQUITY-DAMAGE-CLAIM OF THE TITLE-~15: D.~S.~C.~S.~1692-~e BY THE FRAUD AND MISLEADING-STATEMENT-DAMAGES: TITLE-~15: D.~S.~C.~S.-~78-~ff WITH THE CRIMINAL-PENALTIES OF THE $25-MILLION-DOLLARS BY THE STATE-ATTORNEY-GENERAL.

~44 **FOR THESE SUPPORTING-TERMS OF THIS DOCUMENT-CLAIMS ARE WITH THE DOCUMENT-STATES-POSTAL-SERVICE-DI-STRICT-COURT OF THE YOUR-STATE-TERRITORY.**

~1 FOR THE **D.-C.-~4:** FOR THE **PROCESS OF THE SERVICE ~a** WITH THE SUMMONS, **~b** WITH THE FORM, **~c** WITH THE SERVICE OF THE CLAIMS WITH THE VASSALEES, **~d** WITH THE SUMMONS AND: COMPLAINT WITH THE **21-DAYS**-ANSWERING-BACK TO THE COURT, **~g** WITH THE JOINING-PROOF OF THE SERVICE WITH THE CLERK OF THE COURT, **~h** WITH A COURT-SCHEDULING-TIMES BY THE SERVICE, **~j** WITHIN THE TIME-LIMIT OF THE **45-DAYS**-JOINING-SERVICE.

~2 FOR THE **D.-C.-~5 = WITH THE SERVICE:** **~a** WITH THE QUIREMENT; **~d** WITH THE CLAIMS OF THE FILING; **~e** FOR THE FILING WITH THE **COURT-PORT-CLERK IS** WITH THE SERVICE-CLAIMS OF THE PERSON OVER AN AGE OF THE 18-YEARS AND: NOT IN THE MATTER OF THE CORPORATION-CASE.

~3 FOR THE **D.-C.-~6 = WITH THE TIME:** **~a** WITH THE COMPUTATION-MONDAY-THROUGH-FRIDAY-STATE-CASES AND: EVERYDAY-CONTINUANCE WITH THE FEDERAL COURT, DISTRICT COURT AND: STATE COURTS. **~d** WITH THE COMPLAINTS AND: STATEMENTS **ARE** WITHIN THE SERVICE OF THE FIVE-DAYS-CLAIMS-NOTICES WITH THE TRIAL BY THE CLAIMANTS AND: ONE-DAY-SERVICE WITH THE VASSALEES'-TRIAL.

~4 FOR THE **D.-C.-~7 = WITH THE PLEADINGS:** **~a** WITH THE PLEADINGS IN THE **C.-S.-S.-C.-S.-L.; ~b** WITH THE COMPLAINT OF THE **C.-S.-S.-C.-S.-L.**-CLAIMS **IS** WITH THE DAMAGES BY THE **C.-S.-S.-C.-S.-L.**-CORRECTION-SOUGHT. NOTE: FOR THE CLAIMS OF THE FRAUDS **ARE** WITH THE CLAIMANT'S-COMPLAINT BY THE SUING WITH THE CORRECTIONS BY THE CLEAR-MEANINGS WITH THE WORDS AND: CLOSURES WITH THE COMPLAINT AGAINST THE F.-L.-F. BY THE VASSALEE'S-PLEADINGS BY THEIR AUTOGRAPHS.

~5 FOR THE D.-C.-~8 = **WITH THE CLAIMS OF THE PLEADINGS**: ~a WITH THE CLAIMS OF THE DAMAGES BY THE COMPENSATION-FEES, MONEY, AND: VALUE[PROPERTY]-**C.-S.-S.-C.-S.-L.**-CORRECTIONS; ~b WITH THE **C.-S.-S.-C.-S.-L.**-CLAIM; ~c WITH AN OATH-CLAIM IN THE **C.-S.-S.-C.-S.-L.**-CLAIMS; ~d WITH THE FAILURE OF THE CORRECT-FACTS = :PERJURY, FRAUD, LIES, FICTION, PRESUMPTIONS, ASSUMPTIONS, OPINIONS, MODIFICATIONS AND: [A]PARTHEID; ~e WITH THE PLEADINGS BY THE CONCISE-MEANINGS AND: TERMS OF AN **ONE-THOUGHT** IN EVERY SENTENCE WITH THE CERTIFICATION OF THE CORRECT-POSITIONAL-LODIAL-FACT-PHRASE WITH EACH FACT AND: FOR ONE **VERB** OF THE THINKING IN EVERY SENTENCE.

~6 FOR THE D.-C.-~9 = **WITH THE PLEADINGS-SPECIAL** ~b WITH THE CLAIMS OF THE FRAUDS **ARE** WITH THE CONDITION, WILL AND: VOLITION OF THE MIND; ~e WITH THE JUDGEMENT OF THE **FACT** IN THE **C.-S.-S.-C.-S.-L.**-CLAIM, ~f WITH THE NOW-TIME AND: NOW-PLACE, ~g WITH THE NOW-TIME-FACTS IN THE **C.-S.-S.-C.-S.-L.** **ARE** WITH THE DAMAGE-CLAIM BY THE CLAIMANTS.

~7 FOR THE D.-C.-~10: FOR THE FORM **OF THE PLEADING IS** WITH THE CLAIMS OF THE CAPTIONS IN THE CORRECT-FACTS, ~b WITH THE NUMBERING OF THE SENTENCES OR: PARAGRAPHS AND: PAGES; ~c WITH THE BONDING-(GLUEING, STITCHING OR: MECHANICAL-RIVETTING) OF THE CORPORATION-CASE.

~8 FOR THE D.-C.-~11: FOR THE FRIVOLOUS-FILINGS OF THE WITNESS'S-PLEADINGS **IS** WITH THE DAMAGE-CLAIM OF THE SANCTION WITH THE FICTIONAL-SYNTAX-COMMUNICATION BY THE COURT-VESSEL-DOCUMENT.

~9 **FOR THE** FACTS OF THE F.-L.-F.-MODIFICATIONS **ARE** WITH THE PERJURY-CHARGE BY THE **FRIVOLOUS-FILING**.

~10 **FOR** AN AUTOGRAPH ON THE LEGAL-COURT-**C.-S.-S.-C.-S.-L.**-CORRECTION **IS** WITH THE **C.-S.-S.-C.-S.-L.**-LAW-DOCUMENT OF THE FIVE-DAY-TIME-LIMIT OR WITH THE SANCTIONS AND: FEES.

~11 FOR THE **C.-S.-S.-C.-S.-L.**-SUMMARY-CORRECTIONS OF THE FICTIONAL-COURT-DOCUMENTS **ARE** WITH THE COLLUSION-CLAIM: **TITLE-~28: CHAPTER-~85: D.-S.-C.-S.-~1359 FOR A LETTER OF MARQUE** BY THE VASSALEE'S-F.-L.-F.

~12 FOR THE SUMMARY-CORRECTIONS OF THE DOCUMENT-CLAIM: D.-C.-~12-b:

~13 FOR THE D.-C.-~12-~b-~7 OF THE JOINING **IS** WITH THE CLAIMS OF AN AUTHORITY-JURISDICTION WITH THE **'LAW OF THE FLAG-DOCUMENT'**.

~14 **FOR THE D.-C.-~12-~b-~6 OF THE NOW-TIME-C.-S.-S.-C.-S.-L.-PLEADINGS ARE WITH THE C.-S.-S.-C.-S.-L.-FACTUAL-CLAIMS BY THE C.-S.-S.-C.-S.-L.-DOCUMENTS**.

~15 FOR THE D.-C.-~12-~b-~5 WITH THE CORRECT-PROCESS/LIVERY OF THE CASE-DOCUMENTS IS WITHIN THE **C.-S.-S.-C.-S.-L.**-CERTIFICATION OF THE COURT-CLERK WITH THE PROCESSING OF THE PAPERWORK WITH THE **C.-S.-S.-C.-S.-L.**-CLAIM OF THE PORT-COURT.

~16 FOR THE D.-C.-~12-~b-~4: CORRECT-SERVICE OF THE PAPERWORK **IS** WITH AN AUTOGRAPH-CANCELATION ON THE UNITED-STATES-POSTAL-SERVICE-STAMP AND: END-DORSEMENT ON THE TOP OF THE COVER-PAGE-BACK AND ON THE DOCKETING-PORT-STAMP OF THE COURT.

~17 FOR THE D.-C.-~12-~b-~3: **C.-S.-S.-C.-S.-L.**-VENUE OF THE COURT-FILINGS **IS** WITH THE **C.-S.-S.-C.-S.-L.-CLAIM** BY THE PORT-COURT-DOCUMENT.

~18 FOR THE **LAW OF THE FLAG** IS WITH THE CLAIM OF THE SANCTION AGAINST THE FOREIGN-MODIFICATION WITH THE COLOR, OBJECT OR: SHAPE BY THE FICTIONAL-USE-MODIFICATION WITH THE FACTS.

~19 FOR THE TRAPS IN THE TITLES, NAMES, DATES, CASE-NUMBERS, ITALIC-WORDS, BOXING AND TITLE-SITES **ARE** WITH THE FICTION-LANGUAGE-FORMAT.

~20 FOR THE **D.-C.-~12-~b-~2**: FOR THE COURT OF THE **DOCUMENT-STATES-CORPORATION IS** WITH THE DOCUMENT-CLAIM OF THE **C.-S.-S.-C.-S.-L.**-PORT-JOINING-COURT- AUTHORITY BY THE TERMS-JURISDICTION.

~21 FOR THE D.-C.-~12-~b-~1: FOR THE KNOWLEDGE OF THE **C.-S.-S.-C.-S.-L.**-FACTS **ARE** WITH THE CLAIMS OF THE FACTS WITH AN AUTHORITY-JURISDICTION-CORPORATION-CASE BY THE DOCUMENT-TERMS.

~22 FOR THE CAUSE OF THE D.-C.-~9-~b, D.-C.-~12-b, D.-C.-~56-~d, AND: D.-C.-~7 FOR THE DUE-PROCESS; AND WITH AN EQUAL-GUARANTEE OF THE TITLE-~42: D.-S.-C.-S.-~1985-~2 WITH THE DAMAGE OF THE CORRECT-FACTS BY THE CLAIMANT'S-WITNESSING AND: FACT-EVIDENCE.

~23 FOR THE TITLE-~18: D.-S.-C.-S.-~1621 FOR THE FRAUD-FACT AND: PERJURY OF AN OATH **IS** WITH AN USE OF THE COERCION IN THE VIOLATION OF THE TITLE-~18: D.-S.-C.-S.-~1359 FOR THE RAPE OF THE CORRECT-FACTS WITH THE PERSONS OF AN ACTION WITH THE TITLE-~18: D.-S.-C.-S.-~4, WITH THE PRISON OF THE FICTION-FELONY WITH THE F.-L.-F. AND: FICTION-FACTS AND: TITLE-~18: D.-S.-C.-S.-~3 IN THE PARTICIPATION WITH THE CRIMINAL-COMMUNICATION BY THE AILING-SYNTAX-AUTHOR.

~24 FOR THE DOCUMENT-CLAIMS, CIVIL-CLAIMS, OR: CRIMINAL-CLAIMS WITH THE CASE **ARE** WITH THE DAMAGE-CLAIM BY THE FRAUDULENT-FACT WITH AN OATH OF THE F.-L.-F.-FIDUCIARY-OFFICER AND WITH THE CLAIMS OF THE F.-L.-F./FRAUD-CONCLUSIONS.

~25 FOR THE POINT-IN-TIME-OATH OF A FIDUCIARY-OFFICE **IS** WITH THEIR FIRST-DUTY OF THE CORPORATION WITH THE SECOND-DUTY BY AN AUTOGRAPH.

~26 FOR THE AN ADJECTIVES, PRONOUN OR: VERB-PROCESS IN THE **F.-L.-F. IS** WITH THE **MAIL-FRAUD: TITLE-~18: D.-S.-C.-S.-~1341.**

~27 FOR THE COMPLAINT-JUDGEMENT ON THE PLEADINGS **IS** WITH THE COMPLAINT OF THE FACTS WITH THE FIRST-HAND-KNOWLEDGE OF THE F.-L.-F.

~28 FOR THE D.-C.-~24: FOR THE TITLE-~28: D.-S.-C.-S.-~2403 OF THE DOCUMENT-VESSEL **ARE** WITH THE **C.-S.-S.-C.-S.-L.**-CHALLENGE OF THE CORRECT-FACTS.

~29 FOR THE D.-S.-C.-C.-DOCUMENT-CLAIM--7 OF THE DUE-PROCESS-CLAIM AND WITH THE TITLE--42: D.-S.-C.-S.-~1985-~2 WITH AN EQUAL-GUARANTEE OF THE LAW: D.-C.--12-b-~7, ~1, ~2, BY THE VASSALEES.

~30 FOR THE TITLE--18: D.-S.-C.-S.-~1621: FOR THE CONDITION OF THE MINDS **ARE** WITH THE WILLFUL-VOLITIONS OF THE CLAIMS WITH THE PAYMENTS OF THE FEES WITH THE WRONGFUL-ACTIONS BY THE PERJURY WITH AN OATH.

~31 FOR THE PERSON'S-KNOWLEDGE OF A DOCUMENT-BREACH **IS** WITH THE DAMAGE-CLAIM OF THE DOCUMENT WITH THE PAYING OF THE FEES WITH THE DAMAGED-VESSEL: D.-C.-~9-~b.

~32 FOR THE D.-C.-~38-a: FOR THE TRIAL BY THE TWELVE-PERSON-JURY **IS** WITH THE CLAIM OF THE SUMMARY-CORRECTION WITH THE **C.-S.-S.-C.-S.-L.** BY THE DOCUMENT-COURT.

~33 FOR THE D.-C.-~41-~a: **VOLUNTARY**-TERMINATION OF THE FILED-COMPLAINT **IS** WITH THE VOLUNTARY-WITHDRAW OF THE CASE WITH THE KNOWLEDGE OF THE CORRECTIONS OF AN ORIGINAL-FILING-CASE-CLAIM.

~34 FOR THE D.-C.-~49: FOR THE FACTS OF THE CASES **ARE** WITH THE CORRECT-FACTUAL-CLAIMS-EVIDENCE.

~35 FOR THE D.-C.-~50: FOR THE NEW-TRIAL OF THE CASE **IS** WITH AN USE OF THE **C.-S.-S.-C.-S.-L.**-PLEADINGS.

~36 FOR THE D.-C.-~54: FOR THE CLAIMS OF THE SUMMARY-JUDGEMENT **IS** WITH THE **C.-S.-S.-C.-S.-L.**-CORRECTIONS BY THE PLENIPOTENTIARY-JUDGE: David-Wynn: Miller.

~37 FOR THE D.-C.-~55: OF THE FAULTS OF THE CORRECT-SYNTAX WITH THE TIME-LIMIT-PARTICIPATION **ARE** WITH THE FAILURES OF AN ANSWERING WITH THE VASSALEES'-PLEADINGS OF THE **C.-S.-S.-C.-S.-L.**, WITH THE COURT-DOCUMENT-TERMS.

~38 FOR THE D.-C.-~56: FOR THE SUMMARY-CORRECTIONS IN THE **C.-S.-S.-C.-S.-L.** **ARE** WITH THE CLAIMS OF THE DAMAGES IN THE **C.-S.-S.-C.-S.-L.**-CLAIMS BY THE CLAIMANT'S-CORRECT-DOCUMENT-PLEADINGS.

~39 FOR THE D.-C.-~57: FOR THE CLARATORY-JUDGEMENTS OF THE DAMAGES **ARE** WITH THE CLAIMS OF THE PHYSICAL-EVIDENCE-DAMAGES WITH THE **C.-S.-S.-C.-S.-L.**-FACTS BY THE PERFECT-FACT-EVIDENCE-JUDGE.

~40 FOR THE POLICY AND: CUSTOM OF A DOCUMENT **IS** WITH THE CLAIMS BY THE PLEADINGS OF THE CLAIMANTS WITH THE SUMMARY-CORRECTIONS OF THE VASSALEES-AILING-EVIDENCE ON THIS DATE-~22-~NOVEMBER-~2010, WITH THE **C.-S.-S.-C.-S.-L.**-CORRECTIONS OF THE DOCUMENTING-AUTHORITY-JUDGE.

~41 FOR THE TITLE--42: D.-S.-C.-S.-~1986: KNOWLEDGE OF THE DOCUMENT-DUTIES **ARE** WITH THE CLAIM OF THE CORRECTION WITH THE WRONG-SYNTAX-COMMUNICATIONS BY THE **C.-S.-S.-C.-S.-L.**-DOCUMENT-AUTHORITY.

~42 FOR THE POST-[PRE]POSITIONS: **BY, OF, WITH, WITHIN, THROUGH, IN, ON, ARE** WITH THE NOW-TENSE-AUTHORITY-JURISDICTION-POSITIONAL-LODIAL-FACT-PHRASE WITH THE NOW-TIME-AUTHORITY.

~43 FOR THE **PRONOUN-SYNTAX-VOID**: FOR THE PRONOUN OF THE FICTION **IS** WITH THE TERMS AS A TRAP IN THE COURTROOM WITH THE FICTION-VOID-COMMUNICATIONS.

~44 FOR THE TITLE--**42: D.-S.-C.-S.-~1985-~3**: FOR THE BIAS OF THE VESSEL-DOCUMENT **IS** WITH THE PERSON-CLAIM OF THE DOCUMENT-STATE-TERRITORY WITH THE CONSPIRING OF THE GUISE, WITH THE VACATING, EITHER THE DIRECTION OF THE PERSON OR: CLASS OF THE PERSON'S-EQUAL-GUARANTEE OF AN **EQUAL**-DOCUMENT-CLAIM WITH THE HINDRANCE OF A DOCUMENT-AUTHORITY OR WITH THE JUDGE/ATTORNEY/PERSONS IN THE PERSON'S-CONSPIRACY OF THE THREATENING-PERSON WITH THE VOTE BY THE GIVING OF THE PERSON-SUPPORT/ADVOCACY IN THE LEGAL-MANNER, OR: BY THE DAMAGING OF THE PERSON/PERSON/SELF OR: PROPERTY OF THE SUPPORT/ADVOCACY IN THE CASE BY THE CONSPIRACY IN THE **TITLE-~42: D.-S.-C.-S.-~1985-~1**, WITH THE ONE-OR-MORE-PERSONS' OF THE CIVIL-CONSPIRACY-DAMAGE WITHIN THE DOCUMENT.

~45 FOR AN AUTHORITY-JURISDICTION OF THE DOCUMENT-FACTS **ARE** WITHIN THE COURT-DOCUMENT-CLAIMS OF THE CORRECT-LODIAL-[ARTICLE] WITH THE CLAIMS OF AN AUTHORITY-JURISDICTION WITH THE CORRECT-POSITIONAL-LODIAL-FACT-PHRASE IN THE NOW-TIME-TENSE WITH THE LODIAL-[ARTICLE] IN THE NOW-TIME-TENSE WITH THE FACT IN THE NOW-TIME-TENSE WITH THE WORDS OF THE SENTENCE.

~46 FOR THE TITLE--18: D.-S.-C.-S.-~242: FOR THE PERSON OF THE FICTIONAL-COLORING WITH THE DOCUMENT-LAW-STATUTES, ORDINANCE OR: REGULATIONS **ARE** WITH THE DAMAGE-CLAIMS OF THE DOCUMENT IN THE NOW-TENSE WITH THE DOCUMENT BETWEEN THE TWO-OR-MORE-PERSON OF THE DOCUMENT-STATES-COURT-CORPORATION.

~47 FOR THE JUDGE'S-KNOWLEDGE OF THE FACTS **ARE** WITH THE DUTY-CLAIM OF THE CORPORATION-DOCUMENT IN THE **C.-S.-S.-C.-S.-L.** WITH THE CLAIMS OF THE PERSONS, OR: CORPORATIONS WITH THE KNOWLEDGE OF THE SYNTAX-WORD-MEANINGS WITH THE DOCUMENT-AUTHORITY OF THE PEACEFUL-DUTY WITH THE JUDGE, POSTMASTER, BANK-BANKER, AND: CLERK AS THE FIDUCIARY-PERSON.

~48 FOR THE **FRAUD-FACT-PERJURY**: FOR THE CLAIMS OF THE FACT, BELIEF, KNOWLEDGE **IS** WITH THE WITNESSING-CLAIMS OF THE FACTUAL-EVIDENCE WITH AN OATH OR WITH THE DUTY BY THE FIDUCIARY'S-DOCUMENT-OATH.

~49 FOR THE NEGLECT OR: NEGLECT WITH THE STOPPING OF THE WRONG-DOER, WHEN THE WRONGFUL-CLAIMS **ARE** WITH THE DAMAGE-CLAIM AGAINST THE PERSON WITH THE PERSON OR: PERSON'S-LEGAL-COUNCIL.

~50 FOR THE '**TORT**' OF THE DOCUMENT-WRONGS **ARE** WITH THE CONSPIRACY AGAINST THE DUTY, PERSON, DOCUMENT OR: CONSTITUTION BY THE FIDUCIARY'S-KNOWLEDGE OF THE WRONGFUL-SYNTAX-USE OF AN ACTUAL OR: THREATENING, FEAR, OR WITH THE COLOR OF THE DOCUMENT-CLAIM: **TITLE-~18: D.-S.-C.-S.-~871**.

~51 FOR THE **LARCENY BY THE FRAUD AND: CHEATING IS** WITH THE CORRECTING OF THE FALSE-CLAIM.

~52 FOR THE FRAUDULENT-TAKING OR: POSSESSION OF THE CLAIMS OF THE PERSON **IS** WITH THE F.-L.-F., BY THE FIDUCIARY OR: CONFIDENTIAL-PERSON.

~53 FOR THE **BREACH** OF THE COMMISSION, OMISSION, OR: DOCUMENT OF THE DUTY, AUTHORITY, FIDUCIARY, TERMS, CONDITIONS **IS** WITH THE CLAIM AS THE NEGLIGENT-PERSON

~54 FOR THE **RACKETEERING** OF AN ORGANIZATION-CONSPIRACY **IS** WITH THE COMMITMENT OF THE CRIMES WITH THE TORT/COERCION, RAPE OR WITH THE COERCION OF THE LIFE, PARTY, PERSON, DOCUMENT, DOCUMENT OR: CORPORATION BEYOND THE POINT OF THE COVERY WITH AN ENGINEERING OF A CLAIM WITH A DAMAGE AGAINST THE PERSON OR: PERSONS.

~55 FOR **AN ACTS OF THE RACKETEERING ARE** WITH THE OWNER'S-LODIAL-CLAIMS OF THE FINANCIAL-EQUITY-CLAIM IN THEIR BUSINESS, WITH THE MEANS OF THE THREAT WITH OVER-POWERING-FORCE.

~56 FOR THE LEGAL-NECESSARY-ELEMENT OF THE FEAR **ARE** WITH THE CLAIMS OF THE TORT IN AN ORAL OR: WRITING WITH THE **TITLE-~42: D.-S.-C.-S.-~1985-~3**.

~57 FOR THE **TITLE-~18: D.-S.-C.-S.-~242-~1** FOR THE 2-OR-MORE-PERSON OF THE COMING-TOGETHER WITH THE VOIDING OF A CORRECT-DOCUMENT WITH THE FIDUCIARIES OF THE DOCUMENT-COURT OF THE LAW, STATUE, ORDINANCE, REGULATION, IN THE DOCUMENT-STATE-**CORPORATION-COURT** WITH THE TWO-DIFFERENT-PUNISHMENTS, PAINS, PENALTIES OR: TREATMENT ON AN ACCOUNT OF THE PERSON-BEING-FOREIGN = **(NO PUNCTUATION IN THE DEAD-NAME) = FICTION/FOREIGN**, OR BY THE CLAIMS OF THE PARSON'S-COLOR, RACE, FAITH, OR: SEX **ARE** WITH THE CLAIMS BY THE DOCUMENT-PUNISHMENT.

~58 FOR **AN ADJECTIVE** OF THE COLORFUL-OPINION **IS** WITH THE MODIFICATION OF THE FACT, WITH THE TWO-OR-MORE-FACTS-JOINING WITH THE LAST-FACT OF THE FACT-PHRASE **IS** WITH THE CHANGING OF THE FIRST-FACT INTO AN ADJECTIVE AND WITH THE ADJECTIVE-CHANGES OF THE SECOND-FACT-WORD INTO THE PRONOUN-SYNTAX.

~60 FOR THE **DURESS**: FOR AN ILLEGAL-PURPOSE/THREAT OF THE PERSON'S-COMPLIANCE WITH THE THREAT WITH THE BEATING, VIOLENCE, PAIN OR: LOSS OF THE FREEDOM BY THE PRISON WITH THE MENTAL OR: FINANCIAL-HARM BY THE COERCING: **TITLE-~28 CHAPTER-~85: D.-S.-C.-S.-~1359** FOR THE CONTROVERSY-FORCE.

~61 FOR THE ATTORNEY OF THE DOCUMENTING-SERVICES **ARE** WITH THE DAMAGE-CLAIM OF THE **C.-S.-S.-C.-S.-L.**-FAILURE, LOSS OR: DAMAGES BY THEIR SERVICES.

~62 FOR THE **BIAS**: FOR THE CONCEIVE/OPINION LEANING-TOWARDS-ONE-SIDE OF THE CAUSE WITH THE REASON-OTHER-THAN OF THE CONVICTION OF THE CORRECT-FACTS.

~63 FOR THE **[DIS]CRIMINATION = [A]PARTHEID**: FOR THE TREATMENT OF THE PERSON'S-QUALITY **IS** WITH THE DAMAGE-CLAIM OF THE NEGLECT WITH THE FAVORING OF THE ONE-PERSON WITH THE APARTHEID OF THE SECOND-PERSON. [WITH THE TITLE-~VII OF THE ~1964: DOCUMENT-CIVIL-RIGHTS-ACT]

~64 FOR THE **TITLE-~42: D.-S.-C.-S.-~1985-~2 WITH THE [OB]STRUCTING OF THE CORRECT-FACTS**, BY THE THREATENING AGAINST A WITNESS WITH THE TWO-OR-MORE-PERSONS IN THE CONSPIRING WITH THE THREATENING OF A PERSON/WITNESS IN THE COURT OR BY THE TESTIFYING WITH THE MATTER-PENDING IN THE COURT OF THE PERSON WITH AN ATTENDING, TESTIFYING, OR: CONVINCING OF THE VERDICT OR: CLAIM OF THE GRAND OR: PETIT-JUROR, IN THE COURT, OR WITH THE DAMAGING OF THE JUROR WITHIN THE PERSON-SELF-VALUES OF THE CLAIM WITH THE VERDICT OF THE JUDGEMENT WITH THE JUROR-DUTY OF THE TWO-OR-MORE-PERSONS-CONSPIRACY WITH THE OBSTRUCTING OF THE CORRECT-FACTS WITHIN THE TERRITORY OF THE COURT.

~65 FOR THE **FALSE-SWEARING**: FOR THE TIME-LIMITATIONS OF THE CLAIMS **IS** WITH THE RUNNING-TIME OF THE FIRST-STATEMENT.

~66 FOR THE **CLAIMANTS'-DAMAGE-CLAIMS BY THE VASSALEE'S FICTIONAL-LANGUAGE-DOCUMENTS ARE** WITH THE **VACATING-CLAIM OF THE FICTIONAL-DOCUMENTS** WITH THE SANCTIONS AGAINST THESE VASSALEES **SOMA FINANCIAL**[~871~CORONADO-CENTER-DRIVE~#110,~HENDERSON, NEVADA~89052]

**[LOAN-NUMBER~#8893626]** FOR AN NEVADA TITLE COMPANY-~2500-~NORTH-~BUFFALO, ~SUITE#150,-~LAS-VEGAS, NEVADA-~89128 AND: **EQUITY-CLAIM-CARETAKER-FEES-PAYABLE** TO THE CLAIMANTS.

: *Dimitritza: Toromanova* :**SEAL:**

: *David-Wynn: Miller, ~22~Nov~2010* :SEAL: David-Wynn: Miller, [:**PHONE:**414-466-3584] ~5166 **NORTH-~63ʳᵈ ~STREET, ~MILWAUKEE, ~WISCONSIN-~53218]**

FOR THE CARETAKERS-FEES-DUE TO THE CLAIMANT:
~2006-JULY-~26-THROUGH-2006-~DEC-~31 = 23-WEEKS @ $1195.00 = $27,485,
~2007-YEAR-FEE = $70,574.00
~2008-YEAR-FEE = $79,019.00
~2009-YEAR-FEE = $87,464.00
~2010-JAN-~1-THROUGH-~2010-~DEC.-~29-YEAR-FEE = $79054.00
FOR THE TOTAL-WAGES-DUE WITH THE CLAIMANT: **$343,596.00**
FOR THE FRAUDULANT-SYNTAX-LANGUAGE OF THE CLOSING-DOWN-PAYMENT IS WITH THE SECURITY-DAMAGE OF THE FOUR-TIMES-MONEIES WITH THE CLAYTON-ACT(1914) DUE TO THE CLAIMANT.

Loan Number: 8893626

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 26th day of JULY, 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to SOMA FINANCIAL, A NEVADA CORPORATION

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

145 EAST HARMON AVENUE #519, LAS VEGAS, NEVADA 89109
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                                Page 1 of 3

DocMagic eFarms 800-649-1362
www.docmagic.com

Us3170.rid

:Syntax-word-key-meaning:
1=Adverb          8=Past-time
2=Verb            9=Future-time
3=Adjective       0=Conjunction
4=Pronoun         NC=No-Contract

20060803-0000843

(22)

APN# 162-21-315-062

Return to:
Nevada Title Company
2500 N. Buffalo #150
Las Vegas, NV 89128

27

Fee: $35.00
N/C Fee: $0.00

08/03/2006                09:01:06
T20060135260

Requestor:
NEVADA TITLE COMPANY

Frances Deane                SOL
Clark County Recorder    Pgs: 22

DEED OF TRUST

TITLE OF DOCUMENT
(This cover page must be typed or printed)

1  NC  2  8  /  NC 2  /  3  4  /  3  3  3

THE UNDERSIGNED HEREBY AFFIRMS THAT THERE IS NO SOCIAL SECURITY NUMBER
CONTAINED IN THE DOCUMENT.

Signature   JANET HARRIS

THE UNDERSIGNED HEREBY AFFIRMS THAT THERE IS A SOCIAL SECURITY NUMBER
CONTAINED IN THIS DOCUMENT AS REQUIRED BY
LAW: _____

_____
Signature

:Syntax-word-key-meaning:
1=Adverb          8=Past-time
2=Verb            9=Future-time
3=Adjective       0=Conjunction
4=Pronoun         NC=No-Contract

Assessor's Parcel Number:  162-21-315-062

~~Recording Requested By:~~
SOMA FINANCIAL

And When Recorded Return To:
SOMA FINANCIAL
871 CORONADO CENTER DRIVE #110
HENDERSON, NEVADA 89052
Loan Number: 8893626

Mail Tax Statements To:
SOMA FINANCIAL, 871 CORONADO CENTER DRIVE #110, HENDERSON,
NEVADA 89052

06-07-0913-DLM          [Space Above This Line For Recording Data]

# DEED OF TRUST

MIN: 100246100006678031

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated   JULY 26, 2006          , together with all Riders to this document.
(B)  "Borrower" is  DIMITRITZA TOROMANOVA, A SINGLE WOMAN

Borrower is the trustor under this Security Instrument.
(C)  "Lender" is   SOMA FINANCIAL

Lender is a  NEVADA CORPORATION                                        organized
and existing under the laws of   NEVADA
Lender's address is 871 CORONADO CENTER DRIVE #110, HENDERSON, NEVADA
89052
(D)  "Trustee" is   NEVADA TITLE COMPANY
2500 NORTH BUFFALO STE.150, LAS VEGAS, NEVADA 89128

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01                                    Page 1 of 15                      DocMagic *€Rarmmz* 800-649-1362
                                                                                                www.docmagic.com

Nv3029.secd

:Syntax-word-key-meaning:
1=Adverb          8=Past-time
2=Verb            9=Future-time
3=Adjective       0=Conjunction
4=Pronoun         NC=No-Contract

or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of CLARK :

[Type of Recording Jurisdiction]      [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 162-21-315-062

which currently has the address of        145 EAST HARMON AVENUE #519
                                                      [Street]

LAS VEGAS          , Nevada      89109      ("Property Address"):
[City]                                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges

:Syntax-word-key-meaning:
1=Adverb        8=Past-time
2=Verb          9=Future-time
3=Adjective     0=Conjunction
4=Pronoun       NC=No-Contract

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated   JULY 26, 2006
The Note states that Borrower owes Lender   THREE HUNDRED FORTY THOUSAND AND
00/100                              Dollars (U.S. $   340,000.00         ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
AUGUST 1, 2036

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider            ☐ Planned Unit Development Rider
☐ Balloon Rider                    ☐ Biweekly Payment Rider
☒ 1-4 Family Rider                 ☐ Second Home Rider
☐ Condominium Rider                ☒ Other(s) [specify]
                                   PREPAYMENT RIDER TO SECURITY INST

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional

---

:Syntax-word-key-meaning:
1=Adverb          8=Past-time
2=Verb            9=Future-time
3=Adjective       0=Conjunction
4=Pronoun         NC=No-Contract

and late charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3.  Payments due under the Note and this Security Instrument shall be made in U.S. currency.  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15.  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds.  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure.  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10.  These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01
Page 4 of 15

DocMagic *eForms* 800-649-1362
www.docmagic.com

Nv3029.mz6

:Syntax-word-key-meaning:
1=Adverb        8=Past-time
2=Verb          9=Future-time
3=Adjective     0=Conjunction
4=Pronoun       NC=No-Contract

writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01
Page 5 of 15

DocMagic *EForms* 800-649-1362
www.docmagic.com

Nv3029.mzd

:Syntax-word-key-meaning:
| 1=Adverb | 8=Past-time |
| 2=Verb | 9=Future-time |
| 3=Adjective | 0=Conjunction |
| 4=Pronoun | NC=No-Contract |

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts

:Syntax-word-key-meaning:

| 1=Adverb | 8=Past-time |
| 2=Verb | 9=Future-time |
| 3=Adjective | 0=Conjunction |
| 4=Pronoun | NC=No-Contract |

Nv3029.mzd

unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition.  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument) or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to:  (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01
Page 7 of 15

DocMagic *eForms* 800-649-1362
www.docmagic.com

Nv3029.mzd

:Syntax-word-key-meaning:
1=Adverb      8=Past-time
2=Verb        9=Future-time
3=Adjective   0=Conjunction
4=Pronoun     NC=No-Contract

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01
Page 8 of 15

DocMagic €Fa⊓⊓⊓⊓ 800-649-1362
www.docmagic.com

Nv3029.mzd

:Syntax-word-key-meaning:
1=Adverb      8=Past-time
2=Verb        9=Future-time
3=Adjective   0=Conjunction
4=Pronoun     NC=No-Contract

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this

:Syntax-word-key-meaning:
1=Adverb       8=Past-time
2=Verb         9=Future-time
3=Adjective    0=Conjunction
4=Pronoun      NC=No-Contract

Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01                                    Page 10 of 15
DocMagic *eForms* 800-649-1362
www.docmagic.com

Nv3029.mzd

:Syntax-word-key-meaning:
1=Adverb         8=Past-time
2=Verb           9=Future-time
3=Adjective      0=Conjunction
4=Pronoun        NC=No-Contract

in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT · MERS
Form 3029 1/01
Page 11 of 15

DocMagic *eFerms* 800-649-1362
www.docmagic.com

Nv3029.mzd

:Syntax-word-key-meaning:

| | |
|---|---|
| 1=Adverb | 8=Past-time |
| 2=Verb | 9=Future-time |
| 3=Adjective | 0=Conjunction |
| 4=Pronoun | NC=No-Contract |

servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.  Hazardous Substances.  As used in this Section 21:  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

22.  Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify:  (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and

:Syntax-word-key-meaning:
1=Adverb          8=Past-time
2=Verb            9=Future-time
3=Adjective       0=Conjunction
4=Pronoun         NC=No-Contract

the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lenders' election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Assumption Fee. If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $   N/A

:Syntax-word-key-meaning:

| | |
|---|---|
| 1=Adverb | 8=Past-time |
| 2=Verb | 9=Future-time |
| 3=Adjective | 0=Conjunction |
| 4=Pronoun | NC=No-Contract |

*1   3   4   4   1   0   4   1   2   0   3   3   4   1   3*
*4   4   2   4   4*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
DIMITRITZA TOROMANOVA        -Borrower                                       -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                       -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                       -Borrower

FOR AN AUTOGRAPH WITHOUT AN ENDORSEMENT IS
WITH THE VOID—BILL OF THE LAIDING.

Witness:                                          Witness:

_____                  _____

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01                                Page 14 of 15                    DocMagic *eForms* 800-649-1362
                                                                                      www.docmagic.com

Nv3029.mzd

**:Syntax-word-key-meaning:**

| | |
|---|---|
| 1=Adverb | 8=Past-time |
| 2=Verb | 9=Future-time |
| 3=Adjective | 0=Conjunction |
| 4=Pronoun | NC=No-Contract |

State of Nevada
County of CLARK

This instrument was acknowledged before me on July 24, 2006

by   DIMITRITZA TOROMANOVA

DIANA L. MOWER
Notary Public State of Nevada
No. 03-83176-1
My appt. exp. Nov. 6, 2007

(Seal)

_____
Notary Public

My commission expires 11/6/07

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01                              Page 15 of 15

DocMagic *eFarms* 800-649-1362
www.docmagic.com

:Syntax-word-key-meaning:
1=Adverb          8=Past-time
2=Verb            9=Future-time
3=Adjective       0=Conjunction
4=Pronoun         NC=No-Contract

Nv3029.mzd

*DE = NO*
*SCRIPT = WRITE*
*ION = CONTRACT*

Escrow No.: 06-07-0913-DLM

## EXHIBIT "A"

### LEGAL DESCRIPTION

**PARCEL ONE (1):** LIVING UNIT 519 IN BUILDING "A" OF **FINAL MAP OF TURNBERRY/M.G.M. GRAND TOWERS, LLC, TOWER A,** AS SHOWN BY MAP THEREOF ON FILE IN BOOK 118 OF PLATS, PAGE 16, AND AS SET FORTH IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATION OF EASEMENTS (THE "DECLARATION") FOR THE RESIDENCES AT MGM GRAND-TOWER A, RECORDED MAY 10, 2006 IN BOOK 20060510 AS DOCUMENT NO. 04007, BOTH IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

**PARCEL TWO (2):** AN ALLOCATED INTEREST AS A TENANT-IN-COMMON IN THE COMMON ELEMENTS OF TURNBERRY/M.G.M. GRAND TOWERS, LLC, TOWER A (INCLUDING ANY ANNEXATIONS THERETO), AS SHOWN BY MAP THEREOF ON FILE IN BOOK 118 OF PLATS, PAGE 16, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA, AND AS SET FORTH IN THE DECLARATION.

RESERVING THEREFROM FOR THE BENEFIT OF OWNERS IN FUTURE DEVELOPMENT, NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT AND OTHER PURPOSES, ALL AS DESCRIBED IN THE DECLARATION, AS THE SAME MAY FROM TIME TO TIME BE AMENDED AND/OR SUPPLEMENTED IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

**PARCEL THREE (3):** AN EXCLUSIVE EASEMENT APPURTENANT TO THE UNIT REFERENCED ABOVE, OVER THE COMPONENTS SPECIFICALLY ALLOCATED TO SUCH UNIT AS SHOWN ON EXHIBIT "H" IN THE DECLARATION.

**PARCEL FOUR (4):** A NON-EXCLUSIVE EASEMENT FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT AND OTHER PURPOSE ALL AS DESCRIBED IN THE DECLARATION.

:Syntax-word-key-meaning:

| | |
|---|---|
| 1=Adverb | 8=Past-time |
| 2=Verb | 9=Future-time |
| 3=Adjective | 0=Conjunction |
| 4=Pronoun | NC=No-Contract |

# PREPAYMENT RIDER

Loan Number: 8893626

Date: JULY 26, 2006

Borrower(s): DIMITRITZA TOROMANOVA = NOM-DE-GUERRE

THIS PREPAYMENT RIDER (the "Rider") is made this 26th day of JULY, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of SOMA FINANCIAL, A NEVADA CORPORATION
("Lender"). The Security Instrument encumbers the Property more specifically described in the Security Instrument and located at

145 EAST HARMON AVENUE #519, LAS VEGAS, NEVADA 89109
[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   PREPAYMENT CHARGE**

The Note provides for the payment of a prepayment charge as follows:

**4   BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase. If this Note provides for a variable interest rate or finance charge, and the interest rate or finance charge at any time exceeds the legal limit under which a Prepayment penalty is allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under applicable law.

DocMagic €Forms 800-649-1362
www.docmagic.com

Uspcs.ppf

:Syntax-word-key-meaning:

| | |
|---|---|
| 1=Adverb | 8=Past-time |
| 2=Verb | 9=Future-time |
| 3=Adjective | 0=Conjunction |
| 4=Pronoun | NC=No-Contract |

VC=VOID - CONTINUANCE.

If within THIRTY-SIX ( 36 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

Notwithstanding the foregoing provisions, I may make a full Prepayment without paying a Prepayment charge in connection with a bona fide and arms-length sale of all or any part of, or any legal or beneficial interest in, the Property within the first 36 months of the term of the Note. The phrase "bona fide and arms-length sale" means a sale in which all of the parties involved in the transaction, including without limitation, the buyer, seller, lender, real estate agent or broker, are independent of one another and unrelated by familial or financial interests. I agree to provide the Note Holder with any and all evidence reasonably requested by the Note Holder to substantiate that the sale of the Property is bona fide and arms-length.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)      _____ (Seal)
DIMITRITZA          -Borrower                                   -Borrower
TOROMANOVA


_____ (Seal)      _____ (Seal)
                    -Borrower                                   -Borrower


_____ (Seal)      _____ (Seal)
                    -Borrower                                   -Borrower

:Syntax-word-key-meaning:

| | |
|---|---|
| 1=Adverb | 8=Past-time |
| 2=Verb | 9=Future-time |
| 3=Adjective | 0=Conjunction |
| 4=Pronoun | NC=No-Contract |

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default

---

DocMagic *eFarms* 800-649-1362
www.docmagic.com

Us3170.rid

:Syntax-word-key-meaning:
1=Adverb            8=Past-time
2=Verb              9=Future-time
3=Adjective         0=Conjunction
4=Pronoun           NC=No-Contract

or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I.   CROSS-DEFAULT PROVISION.**  Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)          _____ (Seal)
DIMITRITZA TOROMANOVA   -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                          -Borrower

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                                    Page 3 of 3

DocMagic *CForms* 800-649-1362
*www.docmagic.com*

Us3170.rid

**:Syntax-word-key-meaning:**

| | |
|---|---|
| 1=Adverb | 8=Past-time |
| 2=Verb | 9=Future-time |
| 3=Adjective | 0=Conjunction |
| 4=Pronoun | NC=No-Contract |